**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Alan Bailey, | No. CV 14-2149-TUC-LAB |
| Plaintiff, | **ORDER** |
| vs. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g).

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 9)

The court finds the final decision of the Commissioner must be reversed. The ALJ did not provide clear and convincing reasons for discounting the opinion of Bailey's treating physician. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The case will be remanded for payment of benefits.

PROCEDURAL HISTORY

Bailey filed his application for disability insurance benefits in August of 2011. (Tr. 24, 169) He alleged disability beginning December 2, 2010, due to "arthritis in neck, degenerative disc disease." (Tr. 169, 189, 193)

His claim was denied initially (Tr. 113-115) and upon reconsideration (Tr. 118-120). Bailey requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) George W. Reyes on January 15, 2013. (Tr. 57) In his decision, dated February 8, 2013, the ALJ found Bailey was not disabled. (Tr. 32) Bailey appealed, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-5) Bailey subsequently filed this action appealing the Commissioner's final decision. (Doc. 1)

<u>Claimant's Work History and Medical History</u>

Bailey was born in February of 1952. (Tr. 189) He graduated from college in 1988. (Tr. 194) From 1992 to December of 2010, Bailey worked as a controller at a wholesale auto auction business. (Tr. 194, 204) In that job, he had to walk or stand for one hour per day and sit for eight hours per day. (Tr. 205) He lifted objects weighing less than 10 pounds. (Tr. 205)

In December of 2010, Bailey accepted an early retirement package from his employer. (Tr. 59) At the same time, his neck arthritis was affecting his ability to work. (Tr. 59) He claims a disability onset date of December 2, 2010. (Tr. 57)

<u>Physical Impairments</u>

Bailey has chronic neck pain that became worse in 2010. (Tr. 455) He suspects his neck pain stems from childhood where he suffered a fall of 150 feet onto his neck. (Tr. 303, 543)

In May of 2010, MRI scanning studies of Bailey's neck showed "loss of disc height at C4-5 and C5-6," "[p]rominent posterior osteophytes . . . at C4-5," and "endplate degenerative changes at C4-5." (Tr. 551) The radiologist, Baseer Khan, M.D., gave the following impression: "Multilevel degenerative disc disease, moderate at C4-5 and C5-6 . . . Moderate-to-

1   severe bilateral neural foraminal narrowing at C4-5 and moderate bilateral neural foraminal
2   narrowing at C5-6 due to uncovertebral osteophytes." (Tr. 551-552)

3   Bailey received steroid injections at the base of his neck in October of 2010, November
4   of 2010, and February of 2011. (Tr. 264, 265, 266) Gene Choi, M..D., diagnosed "cervicalgia,
5   cervical disc degeneration." (Tr. 264)

6   Bailey received steroid injections at C6-7 in July, August, and September of 2011 at the
7   Center for Neurosciences. (Tr. 377-379) Bailey reported "he [has] definitely made some
8   improvement, [but] he continues to have significant daily discomfort." (Tr. 377) "This [has]
9   notably limited his ability to perform a number of activities for any extended interval
10  accordingly." *Id*. Richard A. Chase, M.D., assessed chronic cervicalgia and cervical
11  spondylosis. (Tr. 377)

12  MRI studies performed in December of 2011 showed similar evidence of degenerative
13  disc disease at C4-5 and C5-6. (Tr. 424)

14  In March of 2012, Brian P. Callahan, M.D., noted that Bailey's neck pain was getting
15  worse despite his steroid injections. (Tr. 445) He stated "[h]is MRI does show that he has mild
16  multilevel degenerative disc disease throughout, but there is not central stenosis and no
17  compression on the spinal cord." *Id*. Accordingly, Callahan informed Bailey that surgery
18  would not reduce his pain. *Id*. He noted Bailey "seemed very displeased that there was not a
19  surgery I could do to help him with his pain." *Id*.

20  In July of 2012, MRI studies of Bailey's back revealed "degenerative changes . . . most
21  marked L3-4 and L4-5 levels." (Tr. 545)

22  In February of 2012, Jean Goerss, M.D., reviewed the record and completed a Physical
23  Residual Functional Capacity Assessment for the state disability determination service. (Tr. 93-
24  94) She concluded Bailey could lift and/or carry 20 pounds occasionally and 10 pounds
25  frequently, which is consistent with light work. (Tr. 93) He could stand for about six hours and
26  sit for about six hours in an 8-hour work day. (Tr. 93) He should never climb ladders, ropes,
27  or scaffolds. *Id*.

28

1    In July of 2012, Martha A. Goodrich, M.D., reviewed the record and completed a Physical Residual Functional Capacity Assessment for the state disability determination service. (Tr. 109-110)   She concluded Bailey could lift and/or carry 20 pounds occasionally and 10 pounds frequently, which is consistent with light work. (Tr. 108)  He could stand for about six hours and sit for about six hours in an 8-hour work day.  (Tr. 108)   He should never climb ladders, ropes, or scaffolds. *Id.*

In October of 2012, Bailey's treating physician, Jasmine England, M.D., completed a Medical Assessment of Ability to do Work Related Physical Activities. (Tr. 486-488) England listed Bailey's physical impairments as "Dyspnea (due to COPD), Neck Pain (due to cervical degenerative disk disease), [and] Abdominal pain (acid reflux). (Tr. 486)  England opined Bailey could lift or carry less than 10 pounds frequently and less than 10 pounds occasionally. *Id.* He could stand or walk less than two hours per day, and sit for two hours per day. *Id.* He should never climb, kneel, or crouch. (Tr. 487) England further opined that Bailey has severe pain "which precludes ability to function." (Tr. 489)  His pain is "sufficiently severe" to "frequently . . . interfere with attention and concentration." (Tr. 489)  It also "frequently" affects Bailey's "concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)." (Tr. 490)

### Hearing Testimony

On January 15, 2013, Bailey appeared with counsel at a hearing before ALJ George W. Reyes.  (Tr. 56)  Bailey testified to the following:

Bailey worked for 19 years at Cox Enterprises, subdivision Manheim Auto Auctions, as a controller.   (Tr. 77)   Bailey claimed disability as of December 2, 2010.   (Tr. 57) Coincidentally, his company was cutting back at this time, so he accepted a retirement package. (Tr. 58)

Bailey's worst problem is neck pain.  (Tr. 60)  It began in 2009 and by 2010 "it was a real challenge to make it through the day." (Tr. 60)  He also has lower back pain. (Tr. 61)

- 4 -

1    Bailey is 6 feet tall and weighs approximately 160 pounds. (Tr. 62) He does physical
2 therapy and has been told his neck pain cannot be fixed through surgery. (Tr. 63)
3    On a typical day, Bailey will rise and fix breakfast – cereal and fruit. (Tr. 66) He will
4 exercise, shower, and check his e-mail. (Tr. 67) He can "clean a couple of dishes" and "throw
5 some clothes into the washer." (Tr. 68) He can drive short distances, but if the drive is longer
6 than 15 minutes "it's aggravating my arms and my neck." (Tr. 69) Bailey believes he can carry
7 five pounds with each arm. (Tr. 76)
8    Kathleen McAlpine testified as a vocational expert. (Tr. 82) She explained that Bailey's
9 previous job was sedentary and skilled. (Tr. 83) McAlpine opined that a person who could
10 perform light work but who could never use ladders, ropes, or scaffolds, who should only
11 occasionally crawl and use a stool, who should avoid concentrated exposure to extreme cold,
12 wetness, vibration, or hazards, and who can concentrate in 2-hour blocks of time throughout an
13 8-hour day could perform Bailey's past relevant work. (Tr. 84)

15    CLAIM EVALUATION
16    Social Security Administration (SSA) regulations require that disability claims be
17 evaluated pursuant to a five-step sequential process. 20 C.F.R. § 404.1520; *Baxter v. Sullivan,*
18 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the
19 claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). If so, then the
20 claimant is not disabled, and benefits are denied. *Id.*
21    If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step
22 two, which requires a determination of whether the claimant has a "medically severe impairment
23 or combination of impairments." 20 C.F.R. § 404.1520(a)(4). In making a determination at step
24 two, the ALJ uses medical evidence to consider whether the claimant's impairment more than
25 minimally limits or restricts his or her "physical or mental ability to do basic work activities."
26 *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*
27    Upon a finding of severity, the ALJ proceeds to step three, which requires a
28 determination of whether the impairment meets or equals one of several listed impairments that

- 5 -

1 the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20
2 C.F.R. § 404.1520(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1.  If the claimant's impairment
3 meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and
4 no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993).  If the
5 claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the
6 next step.

7 The fourth step requires the ALJ to consider whether the claimant has sufficient residual
8 functional capacity (RFC)[1] to perform past work.  20 C.F.R. § 404.1520(a)(4).  If yes, then the
9 claim is denied.  *Id*.  If the claimant cannot perform any past work, then the ALJ must move
10 to the fifth step, which requires consideration of the claimant's RFC to perform other substantial
11 gainful work in the national economy in view of claimant's age, education, and work
12 experience.  20 C.F.R. § 404.1520(a)(4).

14 The ALJ's Findings

15 At step one of the disability analysis, the ALJ found Bailey "has engaged in substantial
16 gainful activity since December 2, 2010, the alleged onset date."  (Tr. 26)  He nevertheless
17 continued his analysis.  At step two, he found Bailey "has the following severe impairments:
18 Degenerative Disc Disease of the Cervical and Lumbar Spine, Chronic Obstructive Pulmonary
19 Disease."  (Tr. 27)  At step three, the ALJ found Bailey's impairments did not meet or equal the
20 criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20
21 C.F.R., Part 404.  (Tr. 27)

22 The ALJ then analyzed Bailey's residual functional capacity (RFC).  He found Bailey
23 "has the residual functional capacity to perform light[2] work . . . except Mr. Bailey cannot climb

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations.  20 C.F.R. § 404.1545.

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

- 6 -

1 ladders, ropes, or scaffolds." (Tr. 28) "He can occasionally crawl or stoop." *Id*. "He must
2 avoid concentrated exposure to extreme cold or heat, wetness, vibration or hazardous moving
3 machinery." *Id*. "He cannot work at unprotected heights." *Id*. "Mr. Bailey can attend and
4 concentrate for two hours at a time throughout an eight-hour workday, with normal breaks
5 throughout the workday." *Id*.

6 At step four, the ALJ found Bailey was able to perform his past relevant work. (Tr. 32)
7 Accordingly, he found Bailey was not disabled. (Tr. 32)

## STANDARD OF REVIEW

An individual is entitled to disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will be found disabled only if the impairment is so severe that, considering age, education, and work experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. § 405(g). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

---

limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id*.

1    In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The ALJ may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non[-]examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

"Where medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Magallanes,* 881 F.2d 747, 751 (9th Cir. 1989) (punctuation omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[]he must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

DISCUSSION

- 8 -

1     First, the court considers the ALJ's initial finding that Bailey engaged in substantial
2 gainful activity after December 2, 2010, his alleged onset date. (Tr. 26) The ALJ came to this
3 conclusion because of a notation that "Manheim Investments hired the claimant on November
4 30, 2010" and records showing that Bailey "earned a total of $112,350 by the end of the third
5 quarter of 2011." (Tr. 26); (Tr. 182) The ALJ further noted that, in the treatment record of
6 June 2011, Bailey stated: "I think I am going to take early retirement . . . ." (Tr. 26) Based on
7 all this, the ALJ concluded that Bailey was working after his alleged onset date.

8     At the hearing, however, Bailey explained that his employer for the past 19 years was
9 "Cox Enterprises, subdivision Manheim Auto Auctions." (Tr. 77) In December of 2010, he
10 took an early retirement package from that employer. (Tr. 58) Therefore, the notation
11 indicating that he was "hired 11/30/2010" by "Manheim Investments Inc." probably means that
12 on this date he stopped working full time and took a severance package. (Tr. 193) In her
13 response, the Commissioner did not dispute Bailey's explanation for this discrepancy in the
14 earnings record. *See also* (Tr. 101) (indicating that Bailey had not performed work after the
15 alleged onset date).

16    The Commissioner did, however, defend the ALJ's interpretation of Bailey's statement
17 in June of 2011: "I think I am going to take early retirement. . . ." (Tr. 262) The ALJ seemed
18 to think this statement was further evidence that Bailey continued to work in early 2011. The
19 court does not agree.

20    The meaning behind this statement is something of a puzzle. The ALJ seems to think
21 it means what it says, that Bailey was working in early 2011 and thinking of taking early
22 retirement from his job. This assumption, however, is inconsistent with his prior finding that
23 Bailey had a "new" job with Manheim Investments. If Bailey had been hired by a new
24 employer in November of 2010, it is unlikely that he would be eligible for retirement in June
25 of 2011 after only seven months on the job. It must mean something else.

26    The only plausible explanation is that Bailey was given a severance package at the end
27 of November 2010 from Manheim, and in June of 2011, he was simply considering out loud
28 whether or not he should seek further employment or stop working altogether. At the hearing,

- 9 -

1 Bailey conceded that after he took his severance package, he posted his resume on an 2 employment website. (Tr. 58) He was concerned that he might not have enough income to 3 retire completely. *Id*. He eventually decided that he was not physically able to continue 4 working. *Id*.

5 The court finds that substantial evidence does not support the ALJ's finding that Bailey 6 continued to work after his alleged onset date. *See, e.g., Vargas v. Colvin*, 2013 WL 3766562, 7 17 n. 5 (E.D.Cal. 2013). The court further finds the ALJ committed legal error when he 8 improperly discounted the opinion of Bailey's treating physician, Jasmine England, M.D. *See* 9 *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The court does not reach Bailey's remaining 10 claims of error.

11 "Because treating physicians are employed to cure and thus have a greater opportunity 12 to know and observe the patient as an individual, their opinions are given greater weight than 13 the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The 14 ALJ may reject the treating physician's uncontradicted opinion only if he sets forth "clear and 15 convincing" reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the 16 treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion 17 only if he provides "specific and legitimate reasons supported by substantial evidence in the 18 record." *Lester,* 81 F.3d at 830 (punctuation modified). "This can be done by setting out a 19 detailed and thorough summary of the facts and conflicting clinical evidence, stating his 20 interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). 21 "The ALJ must do more than offer his conclusions." *Id*. "He must set forth his own 22 interpretations and explain why they, rather than the doctor['s], are correct." *Id*.

23 If the treating source's opinion "is well-supported by medically and acceptable clinical 24 and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence 25 in [the] case record," it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). If the 26 treating source's opinion is not given controlling weight, the ALJ must nevertheless analyze 27 other factors such as the length, nature, and extent of the treating relationship; the supportability 28 and consistency of the opinion; and the degree of medical specialization possessed by the

1  treating source. 20 C.F.R. § 1527(d)(2 - 6); *see also Sameena, Inc. v. U. S. Air Force*, 147 F.3d
2  1148, 1153 (9th Cir. 1998) ("[A] federal agency is obliged to abide by the regulations it
3  promulgates."). "In many cases, a treating source's medical opinion will be entitled to the
4  greatest weight and should be adopted even if it does not meet the test for controlling weight."
5  SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996). In sum, the ALJ must "give good reasons"
6  for the weight given to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2).

   The Commissioner states that the standard of review here is "specific and legitimate."
The Commissioner, however, does not explain her reasoning. The "specific and legitimate"
standard is applied when the treating physician's opinion is contradicted by another physician.
Here, the court acknowledges that English's opinion is contradicted by the opinions of the non-examining state agency consultants, Jean Goerss, M.D., and Martha A. Goodrich, M.D. (Tr. 93-94); (Tr. 109-110) The ALJ, however, did not rely on the opinions of these consultants as a basis for discounting English's opinion. *See* (Tr. 30-31) In fact, he did not mention these consultants at all in his decision. Accordingly, the court employs the "clear and convincing" test rather than the "specific and legitimate" test.[3] *See Ryan v. Commissioner of Social Sec.*, 528 F.3d 1194, 1201-02 (9th Cir. 2008) (applying the "clear and convincing" test where the ALJ did not rely on the contrary opinions of the non-examining physicians); *see also Pinto v. Massanari*, 249 F.3d 840, 847 -848 (9th Cir. 2001) ("[I]f the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the Commissioner in denying the benefits originally, then we must decline.").

   In this case, Bailey's treating physician, English, listed his impairments as "dyspnea (due to COPD [chronic obstructive pulmonary disease]), neck pain (due to cervical degenerative disk disease), [and] abdominal pain ([due to] acid reflux)." (Tr. 486) She opined Bailey could lift and/or carry less than 10 pounds frequently and occasionally. (Tr. 486) He could stand and/or walk for a total of "less than two hours in an 8-hour day" and "sit (with normal breaks) for a

---

[3] The court finds in the alternative that the outcome of the case would be the same if the "specific and legitimate" standard of review was applied.

- 11 -

1 total of" two hours. (Tr. 486)  The ALJ conceded this exertional limitation would make Bailey
2 disabled.  (Tr. 85)

3 England further opined that Bailey suffers from "severe" pain that frequently interferes
4 with his attention and concentration. (Tr. 489)  The vocational expert stated at the hearing that
5 an individual must be able to attend and concentrate in two hour blocks of time to maintain
6 employment.  (Tr. 85)  Bailey's pain, therefore, constitutes an independent limitation on his
7 ability to work.

8 The ALJ, however, discounted England's opinion and concluded Bailey could perform
9 his past relevant work.  He explained his reasoning as follows:

> The Medical Source Statement submitted by Dr. England in October 2012 suggesting a limited range of sedentary work, with no reaching or manipulation far exceeds Dr. England's treating notes. (EX 16F). Mr. Bailey has not reported any hand or arm symptoms, and Dr. Callahan expressly rejected spine surgery for the claimant due to the lack of radicular symptoms.  The undersigned assigns little weight to Dr. England's suggested limitations because they are inconsistent with the treating record.
>
> Dr. England also attributed her MSS to "dyspnea upon exertion."  The claimant began to report this symptom in October 2012.  As noted above, the claimant's symptoms abated when he reduced the amount of cigarettes he smoked per day. As of December 2012, the record indicates the claimant was again smoking one pack per day.  Nevertheless, Mr. Bailey testified he goes on walks on a daily basis.  His COPD does not significantly affect his exertional level or ability to stand and walk.  However, the undersigned finds this condition limits the claimant from work at extremes of temperature or around vibration.

(Tr. 30-31)  The ALJ did not advance clear and convincing reasons for discounting English's opinion.

English opined that Bailey should be limited to only occasional reaching, handling, and fine manipulation with his right and left hands. The ALJ found this limitation inconsistent with the treating record because "Mr. Bailey has not reported any hand or arm symptoms"  and because "Dr. Callahan expressly rejected spine surgery for the claimant due to the lack of radicular symptoms." (Tr. 30)  The court finds neither of these reasons persuasive.

The ALJ seems to believe that if Bailey has no radiating arm pain, then English's reaching limitation is unsupported.  He overlooks the fact that this reaching limitation probably is intended to avoid aggravating Bailey's *neck* pain and not because of any specific arm or hand

- 12 -

1  problem. Contrary to the ALJ's assertion, England's limitations are not inconsistent with the
2  treating record.[4]

3  The ALJ further concluded that England's assessment of "dyspnea upon exertion" due
4  to his COPD could not have produced significant functional limitation because Bailey is still
5  smoking one pack of cigarettes per day and he takes daily walks. The court finds neither of
6  these reasons persuasive.

7  First, the ALJ argues that the fact that Bailey is still smoking is evidence that his COPD
8  is not significantly affecting his health. The Ninth Circuit, however, has cautioned that some
9  people are so addicted to cigarettes that they continue to smoke even in the face of debilitating
10 impairment. *See Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1227 (9th
11 Cir. 2009). It appears that Bailey may indeed be one of those people. Bailey has been smoking
12 for 40 years. (Tr. 526, 530, 534)  And while he explained to England that he would like to quit
13 smoking, he said he cannot because he "has too much stress." (Tr. 560) Accordingly, the court
14 finds this argument less than persuasive.

15 Second, the ALJ argues that Bailey's COPD must not be too debilitating because he goes
16 for a walk every day. The record does not indicate, however, how far, how fast, or for how long
17 Bailey walks. Accordingly, the ALJ's bare finding that Bailey takes a daily walk is not a
18 persuasive reason for discounting England's assessment of Bailey's condition.

19 England's assessment of Bailey's functional limitations is supported by the treating
20 record. The ALJ failed to provide clear and convincing reasons for rejecting her report.

21 In her response, the Commissioner suggests further reasons why England's opinion
22 should be discounted. She argues, for example, that England's opinion is "brief, conclusory,
23 and inadequately supported by clinical findings." (Doc. 29, p. 12) The ALJ, however, did not
24 advance these argument, and this court may not consider them. *See Pinto v. Massanari*, 249
25 F.3d 840, 847 -848 (9th Cir. 2001).

---

[4] The court's analysis assumes that the ALJ is correct and Bailey reported no arm or hand symptoms. In fact, England's treatment record does contain a report of back and arm pain. (Tr. 471)

- 13 -

1    The ALJ improperly discounted the treating physician's opinion of disability. The final
2 decision of the Commissioner must be reversed. Ordinarily, if the Commissioner is reversed,
3 the court should remand for further administrative proceedings. The court may, however,
4 remand for payment of benefits if "(1) the record has been fully developed and further
5 administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide
6 legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;
7 and (3) if the improperly discredited evidence were credited as true, the ALJ would be required
8 to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.
9 2014).

10   Here, all three requirements are fulfilled. "The record has been fully developed and
11 further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at
12 1020. The Commissioner argues that further administrative proceedings would be useful
13 because if the ALJ erroneously rejected certain functional limitations, the case should be
14 remanded for the ALJ to evaluate the effect of those limitations on the RFC. The court does not
15 agree that this qualifies as a "useful purpose" under *Garrison*. Rather, this seems to be simply
16 a request that the ALJ be given another chance to get it right. As the Ninth Circuit observed in
17 *Garrison*, "our precedent and the objectives of the credit-as-true rule foreclose the argument that
18 a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a
19 'useful purpose' under the first part of credit-as-true analysis." *Garrison v. Colvin*, 759 F.3d
20 995, 1021 -1022 (9th Cir. 2014)

21   Second, the ALJ failed to provide clear and convincing reasons for discounting the
22 treating physician's opinion. *See above*. Third, if the treating physician's opinion were credited
23 as true, Bailey necessarily would be found disabled. The ALJ opined that Bailey could, at the
24 most, perform gainful work for four hours per day  (two hours of sitting and two hours of
25 standing or walking). (Tr. 486) This is not enough to maintain employment. (Tr. 85) All three
26 parts of the *Garrison* test are fulfilled, and benefits should be awarded.

27   The Commissioner argues that the record contains "evidence of equivocal statements
28 regarding Plaintiff's decision to stop working, reports of improved functioning with treatment,

- 14 -

and physical examination findings inconsistent with disabling limitations." She therefore urges that this court exercise its discretion and remand the case for further proceedings. The court, however, has examined the entire record and finds no reason to seriously doubt that Bailey is disabled. *See Garrison*, 759 F.3d at 1022-23. Accordingly, this case will be remanded for payment of benefits. *See also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 15th day of June, 2015.

*Leslie A. Bowman*
Leslie A. Bowman
United States Magistrate Judge